UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANK J. LaFORGIA, LUCIO LaFORGIA,

                      Plaintiffs,

    v.

KEN HOCH, THE TOWN OF CORTLANDT,

                      Defendants.

No. 15-CV-8589 (KMK)

OPINION & ORDER

Appearances:

Steven Felsenfeld, Esq.
Hilpert Law Offices
Croton, NY
*Counsel for Plaintiffs*

John J. Walsh, II, Esq.
Paul E. Svensson, Esq.
Hodges, Walsh & Slater, LLP
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Plaintiffs Frank J. LaForgia and Lucio LaForgia (collectively, "Plaintiffs") brought this Action against Defendants Ken Hoch ("Hoch") and the Town of Cortlandt (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983, alleging that Defendants violated their rights by taking their personal and real property for public use without just compensation. (*See* Second Am. Compl. ("SAC") (Dkt. No. 55).) Before the Court is Defendants' Motion To Dismiss. (*See* Notice of Mot. (Dkt. No. 58).) For the reasons to follow, the Motion is granted.

I. Background

A. Factual Background

The following facts are taken from Plaintiffs' Second Amended Complaint and are assumed true for the purpose of resolving the Motion.

At all relevant times, Plaintiffs resided in the Town of Cortlandt, in Westchester County, New York. (*See* SAC ¶¶ 6–7.) At all relevant times, Hoch was (and still is) the Assistant to the Director of the Town of Cortlandt Department of Technical Services, Code Enforcement Division, and was also the Code Enforcement Officer. (*See id.* ¶ 9.)

As of February 25, 1992, non-party James Martin ("Martin") owned a 23-acre property within the Town of Cortland, which encompassed the Riveredge Trailer Park, which itself contained a separately designated area in which Plaintiffs resided, known as the "Sea Plane Base." (*Id.* ¶ 10.) On or about February 25, 1992, Martin's property became encumbered to the Town of Cortland for property tax arrearages of roughly $45,000. (*See id.* ¶ 11.) To discharge these tax arrearages, Martin deeded the property to the Town of Cortland, but retained an interest in the property and noted in the deed that "for ten (10) years after [Martin's] death the residents at Riveredge would be permitted to retain their rights of use and quiet enjoyment upon the Property." (*Id.* ¶ 12.) Martin ultimately passed away on July 3, 2006. (*See id.* ¶ 14.)

During the relevant time period, Plaintiffs "were the rightful parties [in] interest," in real property located at 7 Hardy Street, Lots 42–45, Verplanck, within the Town of Cortlandt "by virtue of a lease, month-to-month tenancy, current or former membership in a tenant's association and/or rights accrued based upon ongoing and continuous occupancy." (*See id.* ¶ 24.) While Plaintiffs were residing at this address, the property was impacted by Superstorm Sandy. (*See id.* ¶ 15.) The residents of Riveredge did not lose power during the storm, nor were

the meters or power mains submerged or compromised.  (*See id.* ¶¶ 16–17.)  Nonetheless, the Town of Cortland disconnected the electrical mains, "alleging that the Riveredge electrical system had suffered damage."  (*Id.* ¶ 18.)  This was done at Hoch's direction.  (*Id.* ¶ 19.)

On or about November 2, 2012, the Town of Cortland and Hoch determined that "electric service meter boards and underground cable feeders were damaged," (*id.* ¶¶ 21–22 (internal quotation marks omitted)), and further, that "due to electrical hazards and damage from flooding the trailers on the site have been deemed unsafe and uninhabitable," (*id.* ¶ 23 (alteration and internal quotation marks omitted)).  This determination was made upon an inspection and assessment made by Hoch on or before November 2, 2012, wherein the Town of Cortland engaged New York Electrical Inspection Services, which in turn noted that "the electrical to the Sea Plane Base is hazardous and should be disconnected," and that the electrical systems at the entire Riveredge property "had been damaged by water and ha[d] to be replaced."  (*Id.* ¶¶ 28–30 (internal quotation marks omitted).)  Hoch then determined that the properties, including Plaintiffs' properties, "were uninhabitable and unrepairable," despite being "aware of the fact that New York Electrical Inspection Services made no finding of any threat to life or safety" with regard to Plaintiffs' property.  (*Id.* ¶¶ 31–32.)  Accordingly, Hoch began condemnation proceedings for Plaintiffs' property and began the process of eviction.  (*See id.* ¶ 33.)  Plaintiffs contend that the Town's claim that the premises were uninhabitable and unrepairable was "a pretext to remove [P]laintiff[s] from the premises and permit the Town . . . to assume early possession and/or accelerate the vesting of its remainder interest."  (*Id.* ¶ 43.)

On November 2, 2012, the Town of Cortland posted a notice of condemnation within Riveredge, which stated that each trailer had been condemned. (*See id.* ¶ 36.)[1] The notice set November 5, 2012 as the date of removal, and offered $1,500 to each resident as a relocation payment. (*See id.* ¶¶ 37–38.)

On November 9, Hoch did, in fact, condemn the Property and Plaintiffs' personal property situated there and evicted Plaintiffs from the Property. (*See id.* ¶ 39.) As a result of the eviction, the Property was taken from Plaintiffs for public use. (*See id.* ¶ 46.) The Town of Cortlandt has since continued to occupy and use the Property. (*See id.* ¶ 45.) Plaintiffs allege that at no point was compensation paid for the taking of their property for public use, (*see id.* ¶ 48), nor were there exigent circumstances that would have warranted the actions of Defendants, (*see id.* ¶ 47).

On January 29, 2013, Plaintiffs served a Notice of Claim on the Town of Cortland pursuant to the General Municipal Law. (*See id.* ¶ 49.) The Town of Cortland thereafter failed to serve a notice of hearing upon Plaintiffs. (*See id.* ¶ 51.) No hearing was held, and Plaintiffs commenced this Action. (*See id.* ¶ 52.)

B. Procedural History

Plaintiffs filed the Complaint on November 2, 2015, bringing claims under § 1983 against both Hoch and the Town of Cortlandt, alleging that the taking of their property without just compensation was in violation of their Fifth Amendment right to be paid just compensation for their property and their Fifth and Fourteenth Amendment rights to due process. (*See* Compl. (Dkt. No. 1).) On March 8, 2016, Defendants filed a letter requesting leave to file a Motion To

---

[1] The SAC contains two paragraphs numbered as 36. The Court refers here to both of these paragraphs.

Dismiss, (*see* Dkt. No. 7), and after Plaintiffs failed to respond, the Court entered a briefing schedule on the motion, (*see* Dkt. No. 9). Before briefing on the motion commenced, however, Defendants filed a notice of death pursuant to Federal Rule of Civil Procedure 25(a)(1), alerting the Court that Plaintiff Lucio LaForgia had passed away. (*See* Dkt. No. 10.) Plaintiffs thereafter submitted a letter asking for leave to file a motion to substitute a proper party in place of Lucio, and leave was granted. (*See* Dkt. No. 12.) Plaintiffs thereafter filed the motion, (*see* Dkt. No. 14), which Defendants opposed, (*see* Dkt. No. 15).

On July 21, 2016, the Court denied Plaintiffs' motion to substitute. (*See* Dkt. No. 16.) The Court reasoned that Plaintiffs had not provided legal authority for the proposition that Lucio's claim survived his passing, and also pointed out that Plaintiffs had not offered any evidence that Frank LaForgia—the party that Plaintiffs proposed would take Lucio's place—was a "proper party," as he was neither the successor of the deceased nor, at the time, the representative of the estate. (*See id.*) The motion was therefore denied without prejudice, but Plaintiffs were told they could renew their request. (*See id.*)

On August 3, 2016, Defendants filed a new letter motion requesting leave to file a Motion To Dismiss. (*See* Dkt. No. 17.) Plaintiffs responded on August 24, 2016, opposing the application. (*See* Dkt. No. 19.) At a conference held on October 19, 2016, (*see* Dkt. (minute entry for Oct. 19, 2016)), the Court entered a briefing schedule for the Motion, (*see* Order (Dkt. No. 22)). On November 3, 2016, Defendants filed their Motion and supporting papers. (*See* Dkt. Nos. 23–27.) On January 9, 2017, Plaintiffs filed their opposition, (*see* Dkt. Nos. 29–32), and on January 12, 2017, Defendants filed their reply, (*see* Dkt. No. 33).

On July 14, 2017, the Court issued an Opinion and Order dismissing all of Plaintiffs' claims without prejudice. (*See* Opinion & Order 19 (Dkt. No. 34).) Plaintiffs were also given 10

days to update the Court regarding the status of the estate proceedings with regard to the prior substitution motion. (*See id.* at 20.) That letter was filed on July 24, 2017. (*See* Dkt. No. 35.) On August 11, 2017, Plaintiff Frank LaForgia filed an Amended Complaint through his then-counsel, (*See* Am. Compl. (Dkt. No. 36)), but on that same day informed the Court that he was seeking new counsel and requested an extension of time to file a Second Amended Complaint, (*See* Dkt. No. 37). That request was granted on August 18, 2017. (*See* Dkt. No. 39.) On October 19, 2017, Plaintiffs' current counsel joined the case, (*see* Dkt. Nos. 48–49), and received a further extension to file a Second Amended Complaint, (*see* Dkt. No. 50). On November 7, 2017, Plaintiffs filed the operative Second Amended Complaint. (*See* SAC.) Defendants thereafter filed a letter seeking to dismiss the SAC, (*see* Dkt. No. 53), and the Court set a briefing schedule, (*see* Mot. Scheduling Order (Dkt. No. 57)).

On December 14, 2017, Defendants filed their Motion To Dismiss and accompanying papers. (*See* Dkt. Nos. 58–60.) On January 16, 2018, Plaintiffs filed their Opposition and a Cross-Motion To Amend and substitute Dominick LaForgia as Administrator for Lucio LaForgia's estate. (*See* Dkt. Nos. 61–63.) Defendants filed their Reply on January 18, 2018. (*See* Defs.' Reply in Supp. of Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 65).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil

6

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B. Analysis

Plaintiffs bring several state and federal claims.[2] The Court will first address Plaintiffs' federal takings and due process claims in turn, and then consider Plaintiffs' state law claims.

---

[2] Plaintiffs appear to bring their due process claim under the Fifth and Fourteenth Amendments, (*see* SAC ¶¶ 85–92, 101–109), but because the Fifth Amendment Due Process Clause applies only to the federal government, Plaintiffs' due process claims arise solely from the Fourteenth Amendment. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466 (S.D.N.Y. 2009) (holding that any due process claim "against the City is properly brought under the Due Process Clause of the Fourteenth Amendment, not under that of the Fifth Amendment"); *Mitchell v. Home*, 377 F. Supp. 2d 361, 372–73 (S.D.N.Y. 2005) ("The Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials. Any due process rights [the] plaintiff enjoys as against state government officials . . . arise solely from the Fourteenth Amendment due process clause." (citation omitted)).
 Similarly, Plaintiffs purport to bring claims related to the taking of their property under the Fourth and Fifth Amendments. (*See* SAC ¶¶ 75–84, 93–100.) However, Plaintiffs' takings claim arises only from the Fifth Amendment's proscription of taking without just compensation, not the Fourth Amendment's prohibition against unreasonable seizures of property. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 336 (2002) ("The Fifth Amendment forbids the taking of private property for public use without just compensation." (internal quotation marks omitted)). Again, however, the takings claim can only be brought under the Fourteenth Amendment. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 481 n.10 (1987) (noting that the takings clause of the Fifth Amendment is "applied to the States through the Fourteenth Amendment").

1. Takings Claim

Defendants argue that Plaintiffs have failed to exhaust available state remedies, and thus the takings claim must be dismissed. (*See* Defs.' Mem. in Supp. of Mot. To Dismiss ("Defs.' Mem.") 9–11 (Dkt. No. 60).)

A physical taking effected via condemnation is subject to the prudential finality and exhaustion requirements set forth in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). *See Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506, 512–13 (2d Cir. 2014) (noting that *Williamson* applies to all takings claims). In *Williamson*, the Supreme Court explained that a takings claim "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." 473 U.S. at 186. Moreover, because the Fifth Amendment proscribes only the taking of property "without just compensation," "if a [s]tate provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 194–95; *see also Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 109 (2d Cir. 2009) ("Before a federal takings claim can be asserted, compensation must first be sought from the state if it has a reasonable, certain and adequate provision for obtaining compensation." (internal quotation marks omitted)). Finally, *Williamson* "applies to regulatory and physical takings alike, a physical taking in itself satisfies the need to show finality." *Kurtz*, 758 F.3d at 513.

There is no question that New York provides a process for obtaining just compensation for the use of eminent domain. *See Viteritti v. Inc. Vill. of Bayville*, 831 F. Supp. 2d 583, 591 (E.D.N.Y. 2011) (citing to New York State Eminent Domain Procedure Law and the New York

9

State Constitution); *Allocco Recycling, Ltd. v. Doherty*, 378 F. Supp. 2d 348, 361 (S.D.N.Y. 2005) ("Well-settled law in [the Second] Circuit establishes that New York does provide adequate means for obtaining compensation for a . . . taking."). Specifically, "[i]n New York, there are two such reasonable certain and adequate provisions. One is to seek compensation through the procedures detailed in the New York State Eminent Domain Procedure Law. The other is to bring a state law action under Article I, Section 7 of the New York State Constitution." *Viteritti*, 831 F. Supp. 2d at 591 (alteration and internal quotation marks omitted).[3] In the Second Circuit, failure to allege compliance with those state procedures is fatal to a takings claim. *See Vandor, Inc. v. Militello*, 301 F.3d 37, 38–39 (2d Cir. 2002) (per curiam) (dismissing on ripeness grounds a takings claim due to the plaintiff's failure to first seek compensation via an Article 78 proceeding); *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 379–80 (2d Cir. 1995) (affirming dismissal of a takings claim where the plaintiff had failed to allege exhaustion of state remedies); *Guichard v. Town of Brookhaven*, 26 F. Supp. 3d 219, 225 (E.D.N.Y. 2014) (holding that a plaintiff bringing a takings claim "must allege that he exhausted state procedures for obtaining just compensation," and dismissing the complaint because the plaintiff "ha[d] not alleged exhaustion of his New York State remedies that may provide just compensation" (alteration and internal quotation marks omitted omitted)); *Viteritti*, 831 F. Supp. 2d at 591 ("Courts within the Second Circuit have uniformly dismissed Fifth Amendment takings claims at the pleadings stage when plaintiffs fail to sufficiently allege that they have

---

[3] To the extent that Plaintiffs allege that the Eminent Domain Procedure Law is inapplicable to their claim, (Pls.' Mem. in Opp'n to Defs.' Mot. To Dismiss ("Pls.' Opp'n") 5 (Dkt. No. 63)), that is inaccurate. Plaintiffs allege a physical taking of property by condemnation an physical possession. (SAC ¶¶ 33–48.) Accordingly, Plaintiffs allege that a physical taking of property was effected, which is therefore subject to the prudential finality and exhaustion requirements set forth in *Williamson*. *See Kurtz*, 758 F.3d at 512–13 (noting that *Williamson* applies to all takings claims).

availed themselves of such state procedures."); *Vaizburd v. United States*, 90 F. Supp. 2d 210, 216–17 (E.D.N.Y. 2000) (dismissing a claim where the plaintiffs failed to seek compensation through either "the procedures detailed in the New York State Eminent Domain Procedure Law," or "bring[ing] a state law action under Article I, Section 7 of the New York State Constitution").

Here, because Plaintiffs have alleged a physical taking of the Property via condemnation and physical possession, (*see* SAC ¶¶ 26, 33–48), *Williamson*'s finality requirement applies, *see Kurtz*, 758 F.3d at 513. However, Plaintiffs' takings claim fails to sufficiently allege exhaustion of state administrative remedies for obtaining just compensation for the condemnation. The Second Amended Complaint makes no mention of exhaustion of the New York State Eminent Domain Procedure Law or institution of an Article 78 proceeding. Plaintiffs' sole allegation related to exhaustion is that they filed a generic Notice of Claim pursuant to the General Municipal Law. (*See* SAC ¶ 49). This is not sufficient to plead exhaustion, as there is simply no indication in the SAC that Plaintiffs complied with the Eminent Domain Procedure Law or instituted *to completion* an inverse condemnation action under N.Y. Em. Dom. Proc. Law §§ 501–513, nor is there any indication that this Notice of Claim was intended to initiate an Article 78 proceeding. *See TZ Manor, LLC v. Daines*, No. 08-CV-3293, 2009 WL 2242436, at *5 (S.D.N.Y. July 28, 2009) (holding that a takings claim was unripe where the plaintiffs "failed to avail themselves of State remedies, and assert that adequate procedure was available to [the] [p]laintiffs because they could have filed an action under Article 1, Section 7 of the New York State Constitution, or brought an Article 78 proceeding"). Indeed, there is no indication of whether an Article 78 proceeding, if actually initiated and completed, was intended to seek just compensation as opposed to some other form of relief. *See Melrose Credit Union v. City of New York*, 247 F. Supp. 3d 356, 372 (S.D.N.Y. 2017) (finding that the initiation of an Article 78

11

proceeding is not sufficient to establish ripeness where the proceeding "did not in fact seek compensation . . . but rather only equitable relief" (emphasis omitted)), *aff'd sub nom. Progressive Credit Union v. City of New York*, 889 F.3d 40 (2d Cir. 2018); *Deepwells Estates Inc. v. Inc. Vill. of Head of Harbor*, 973 F. Supp. 338, 348 (E.D.N.Y. 1997) (dismissing a takings claim where the complaint was "devoid of any allegation that [the plaintiff] made an application to, *and was denied* just compensation by the State of New York pursuant to" the New York Eminent Domain Procedure Law or Article 78 (emphasis added)).

In the face of these deficiencies, Plaintiffs' claim they "believ[ed]" that they "had effectively exhausted their administrative remedies," given the Town of Cortland's lack of immediate response. (SAC ¶¶ 51–52.) However, any supposed futility in pursuing and fully exhausting their state claim is not a basis to excuse exhaustion under *Williamson*. *See Qing Dong v. Town of N. Hempstead*, No. 13-CV-0255, 2013 WL 6407724, at *3 (E.D.N.Y. Dec. 9, 2013) ("[F]utility in initiating a State proceeding is an exception only to the . . . 'final decision' requirement of the *Williamson* test, not to the . . . 'exhaustion' requirement."); *TZ Manor, LLC*, 2009 WL 2242436, at *5 (same). Based on the allegations in the SAC, it simply cannot be said that Plaintiffs in fact "exhausted all reasonable, certain, and adequate state procedures available to recover just compensation." *Qing Dong*, 2013 WL 6407724, at *2 (internal quotation marks omitted); *Kurtz*, 758 F.3d at 514 ("Until such litigation has run its course, the plaintiffs have no ripe takings claim for adjudication in the federal courts."). Accordingly, Plaintiffs have not properly alleged that they have exhausted state administrative remedies, and thus Plaintiffs' takings claims against both Hoch and the Town of Cortlandt are not ripe for review by the Court, and are dismissed.

2. Due Process

Defendants contend that Plaintiffs have failed to state a due process claim because New York offers adequate post-deprivation process for litigants who allege their property has been taken without just compensation. (*See* Defs.' Mem. 11–12.) The Court agrees.

Plaintiffs raise a procedural due process claim arising from the notice provided with regard to the condemnation and eviction. (*See* SAC ¶¶ 36–37 (alleging that the Town provided a "notice of condemnation" in a "blanket form" and allotted "only one (1) business day . . . for residents of Riveredge" to remove their possessions from the property); *id.* ¶ 41 ("In connection with its condemnation and eviction proceedings in the wake of the storm, the Town created boilerplate written notices to provide to persons affected by the aforesaid condemnations and evictions,"); *id.* ¶ 42 ("Prior to the aforesaid condemnation, dispossession and/or eviction of [P]laintiffs no such notice was served upon or otherwise provided to either of them.").)

Plaintiffs' procedural due process claim fails for the same reasons that Plaintiffs' takings claims fail. The Second Circuit has held that the ripeness requirements of finality and exhaustion set forth in *Williamson* apply with equal force "to [procedural] due process claims arising from the same nucleus of facts as a takings claim," which includes a "procedural due process claim[] arising from a physical taking." *Kurtz*, 758 F.3d at 515. This holding arises from the rationale that "the only process guaranteed to one whose property is taken is a post-deprivation remedy," and thus "a federal court cannot determine whether the state's process is constitutionally deficient until the owner has pursued the available state remedy." *Id.* at 516. Moreover, this rule "prevents evasion of the ripeness test by artful pleading of a takings claim as a due process claim." *Id.* There is nothing in the SAC to distinguish the core of Plaintiffs' takings claim from their procedural due process claim—the claims are based upon the exact "same set of facts," and

13

are therefore subject to *Williamson*'s ripeness requirements. *Id.* at 514; *see also Am. Rock Salt Co., LLC v. Wilson*, No. 15-CV-1848, 2017 WL 1243132, at *4 (D. Conn. Jan. 6, 2017) ("A takings claim and a due process claim have the same nucleus of facts when they are based on the same set of facts." (internal quotation marks omitted)). As such, Plaintiffs' procedural due process claims, are not ripe.

Accordingly, Plaintiffs have not stated a due process claim, and Defendants' Motion is granted.[4]

### 3. State Law Claims

Because the Court dismisses all of the federal claims against Hoch and the Town of Cortlandt, it need not exercise its discretion to maintain supplemental jurisdiction over any pending state-law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). Thus, to the extent Plaintiffs assert claims for breach of contract, intentional infliction of emotional distress, or violations of various municipal ordinances, (*see* SAC ¶¶ 110–148), the Court declines to exercise supplemental jurisdiction over those claims. *See Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008) ("[I]f [the plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims.").[5]

---

[4] Because Plaintiffs have not stated a claim, the Court need not examine, at this stage, Hoch's qualified immunity defense or the Town of Cortlandt's *Monell* liability with regard to Plaintiffs' takings and due process causes of action. (*See* Defs.' Mem. 13–15.)

[5] Because the Court dismisses all of Plaintiffs' claims, it need not consider the merits of Plaintiffs' Motion to permit the filing of a Third Amended Complaint wherein Lucio LaForgia

14

III. Conclusion

In light of the foregoing analysis, the Court grants Defendants' Motion To Dismiss the Second Amended Complaint in its entirety and denies Plaintiffs' Motion To Substitute. As Plaintiffs have been represented by counsel throughout these proceedings and have already amended their Complaint once, these claims are dismissed with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alterations and internal quotation marks omitted)). The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. No. 58, 61), and close this case.

SO ORDERED.

DATED: September 28, 2018
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

would be substituted with Dominick LaForgia as the administrator of Lucio LaForgia's estate. (*See* Dkt. No. 61.) Accordingly, that Motion is denied.